671 P.2d 1099

Fred S. BAILEY, Plaintiff-Respondent,

v.

Guy R. EWING, Defendant-Third Party Plaintiff-Appellant,

v.

Gary ERHARDT, as Personal Representative of the Estate of Mary Ellen Erhardt, aka Mae E. Erhardt, Deceased, Third Party Defendant-Respondent.

No. 14318.

Court of Appeals of Idaho.

Oct. 25, 1983.

**638**

David Lee Posey, Payette, for defendant-third party plaintiff-appellant.

Dwaine L. Welch, of Welch & Osborn, Payette, for third party-defendant-respondent, Erhardt.

Ira T. Burton, of Burton & Kroll, Weiser, for plaintiff-respondent, Bailey.

SWANSTROM, Judge.

This case involves a boundary dispute between the purchasers of adjoining lots which had been sold by a decedent's personal representative. The dispute is over a strip of land lying between the conflicting boundary lines claimed by the purchasers. One purchaser, Fred Bailey, brought this suit to eject the other purchaser, Guy Ewing, from the disputed strip and to quiet title to the land in himself. Ewing filed a counterclaim against Bailey and a third-party complaint against the personal representative, Gary Erhardt, to reform the deeds so that Ewing would own the disputed strip. The trial court found for Bailey and Erhardt. Ewing appealed.

Appellant Ewing raises several issues in this appeal. However, because we decide that one issue requires a reversal of the judgment entered in the trial court, we discuss only that issue: Did the trial court err in ruling that any mistake concerning the location of the boundary line was a unilateral mistake by Ewing?

The pertinent facts as shown by the record are as follows. On October 1, 1977, Erhardt, as the personal representative of decedent Mary Ellen Erhardt, conducted an auction sale of decedent's real and personal property. The real property consisted of two city lots, numbered "five" and "six," plus an additional twenty-foot strip of land adjoining the east side of lot six. This real property had been owned by decedent for many years, as a single parcel, improved by a house, a shop and other outbuildings. Sometime shortly before the sale the personal representative and the auctioneer decided that the real estate would likely sell for more money if it were divided into two parcels, to be sold separately. It was decided that lot five would be sold as one parcel;

lot six, to the east, and the twenty-foot strip would be sold as the second parcel. When the bidding was conducted Ewing purchased lot five, but because no satisfactory bid was received for the second parcel, it was not sold on the day of the auction.

On the day of the sale, Erhardt conducted a tour of lot five and the house situated on that lot. During the tour, he indicated to Ewing and other prospective purchasers that he thought the east boundary line of lot five was at or near some lilac bushes about thirteen feet east of the house. He stated several times that he was not sure of the actual location of the boundary line. In addition, the auctioneer mentioned, before bidding began, that nobody knew exactly where the property lines were. Two later surveys showed, in fact, that the boundary line between lots five and six was less than one foot east of the base of the house on lot five. The vertical plane of the true line passed through the eaves of the house. Domestic water and sewer lines serving the house were located along side the house beneath the surface of lot six.

A week after the auction, the personal representative sold the remaining parcel to Bailey, who had attended the auction. The personal representative later deeded lot five to Ewing, and lot six and the adjoining strip to Bailey. During his occupancy of the house on lot five, Ewing moved the grass, trimmed the lilac bushes and otherwise acted as owner of the property between the house and the lilacs. In June of 1978, Ewing erected a fence just to the east of the lilac bushes. Bailey then caused a survey to be conducted and learned where the "true" line was. He asserted his claim to the strip of property between the bushes and the line, demanding that the fence be removed. After Ewing failed to remove the fence and relinquish the property, Bailey brought this quiet title action. Ewing counterclaimed and filed a third-party complaint, seeking reformation of his deed and of the deed to Bailey. He alleged mutual mistake, as well as fraud or misrepresentation on the part of the personal representative. The trial court found no fraud or misrepresentation had occurred. We do not question this finding and it is not material to our decision. The trial court also held that Ewing had made a unilateral mistake as to the location of the boundary line between lots five and six and was therefore not entitled to relief. We focus on this conclusion.

■ A mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence. *See* 13 WILLISTON ON CONTRACTS § 1535 (3d ed. 1970). The mistake must be material or, in other words, so substantial and fundamental as to defeat the object of the parties. *Woodahl v. Matthews,* 639 P.2d 1165 (Mont.1982). A unilateral mistake is not normally grounds for relief for the mistaken party, whereas a mutual mistake is. *Loeb Rhoades, Hornblower & Co. v. Keene,* 28 Wash.App. 499, 624 P.2d 742 (1981). *See Moran v. Copeman,* 55 Idaho 785, 47 P.2d 920 (1935). A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain. *Mat-Su/Blackard/Stephan & Sons v. State,* 647 P.2d 1101 (Alaska 1982); *Shrum v. Zeltwanger,* 559 P.2d 1384 (Wyo.1977). Some courts require the parties to have the *same* misconception about the *same* basic assumption or vital fact. *E.g., Shrum v. Zeltwanger, supra.* However, mutual mistake also has been defined to include situations in which the parties labor under *differing* misconceptions as to the *same* basic assumption or vital fact. RESTATEMENT (SECOND) CONTRACTS § 152, comment h (1981) [hereafter cited as Restatement]. We believe the Restatement presents the better view. The assumption or fact must be the same; otherwise two unilateral mistakes, instead of one mutual mistake, would result.

■ It is undisputed that Erhardt intended to sell the house with lot five and that he assumed the boundary line was located so as to allow him to sell the *whole* house. Erhardt believed the boundary line was somewhere east of its subsequently determined "true" location. Ewing shared this

belief. Thus, both Ewing and Erhardt mistakenly believed that the boundary line was further east than it turned out to be. As a result of their ignorance concerning the true location, an act that neither of them intended occurred. Neither intended that the property sold as lot five would fail to include the whole house. Thus, there was an "unintentional act ... arising from ignorance." We hold, therefore, that Ewing and Erhardt made a mutual mistake regarding the location of the boundary line between lots five and six.

■ The mere presence of a mutual mistake does not always afford relief to the party adversely affected by the mistake. A party is said to bear the risk of a mistake when "he is aware, at the time the contract is made, that he has limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement § 154. It is sometimes said in such a situation that, in a sense, there was not mistake but "conscious ignorance." *Id.* § 154 comment c, at 404.

In this case it is clear that—at the time of the auction—neither Erhardt nor Ewing knew where the boundary line was. It is also clearly implied in the findings made by the trial judge and from the trial testimony, that Erhardt thought the boundary line was in the vicinity of the lilacs. The findings go only so far as to say Erhardt "did not represent to [Ewing] specifically that the lilac trees were the East side line of said Lot 5, Block 8." Nevertheless, the record clearly shows that before the sale Erhardt indicated that the line of lilacs was a possible location of the lot boundary. There was no misrepresentation. Erhardt and the auctioneer made it clear that they did not know the actual location of the line. Erhardt sold and Ewing bought lot five with awareness that the true location of the boundary was not known.

■ We believe that both parties assumed a risk of uncertainty as to the line. However, the extent to which the doctrine of "conscious ignorance" applies depends upon the scope of the risk assumed. Clearly Ewing assumed the risk that the lilac bushes might not be within lot five. Ewing had no right to rely upon the uncertain belief of Erhardt that the lilac bushes represented the line. Nevertheless, it is equally clear that neither party consciously assumed a risk that the line would run beneath the eaves of the house. Nothing in the record indicates that either party intended, or reasonably should have anticipated, such a result. The mutual mistake which occurred was beyond the scope of the assumed risk. Therefore, the doctrine of "conscious ignorance" is not a bar to relief for Ewing in this case.

■ Because we have said that a mutual mistake was made, we need to offer some guidance to the trial judge, so that on remand he may determine whether reformation of the deeds is available to Ewing as a remedy. Given the proper circumstances a court may reform the instrument for an aggrieved party. *Bilbao v. Krettinger,* 91 Idaho 69, 415 P.2d 712 (1966). A court acts properly "in reforming an instrument when it appears from the evidence ... that the instrument does not reflect the intentions of the parties" because of mutual mistake. *Collins v. Parkinson,* 96 Idaho 294, 296, 527 P.2d 1252, 1254 (1974). The court reforms the instrument to reflect the intention of the parties, i.e., the agreement the parties would have made but for the mistake. *Exum v. Portneuf-Marsh Valley Irrigation Co.,* 38 Idaho 155, 220 P. 112 (1923).

■ What the parties actually intended is a question for the trier of fact. *Pollard Oil Co. v. Christensen,* 103 Idaho 110, 645 P.2d 344 (1982). Normally the intent of the parties must be derived from the language of the instrument itself if that instrument is unambiguous. *Gardner v. Fliegel,* 92 Idaho 767, 450 P.2d 990 (1969). In the present case the deed is clearly unambiguous as to the land conveyed. The deed conveys to Ewing: "Lot 5 of Block 8, Galloways addition to the City of Weiser, Idaho, as same appears on the official plat thereof on file in the office of the County Recorder of Washington County, Idaho." From the language of the instrument, Er-

hardt intended to convey lot five. This was, in fact, conveyed and therefore the instrument normally could not be reformed.

■ However, the intent as expressed in the written instrument is incompatible with a finding of mutual mistake. To restrict evidence on the true intent of the parties to the four-corners of the instrument would be to nullify the finding of mutual mistake. In *Collins*, our Supreme Court held that parol evidence may be admitted to show a modification of the instrument when mutual mistake is proved. "The parol evidence rule applies only to integrated writings, and if the mistake is mutual the writing is not integrated. Therefore parol evidence is admissible in this instance." *Collins v. Parkinson*, 96 Idaho at 296, 527 P.2d at 1254. In *Bilbao v. Krettinger, supra,* parol evidence was held admissible to prove that by reason of mutual mistake the parties' true intent was not expressed by the written instrument. Parol evidence may also be used to show what that true intent was.

Before reformation of the deeds is granted, however, other questions must be answered. It is undeniable that if the personal representative had not sold lot six, but merely sold lot five to Ewing, the deed to Ewing could be reformed. Only the rights of the estate and Ewing would be affected. However, Erhardt sold lot six to Bailey, thereby involving a third party. Any reformation of Ewing's deed adding land to lot five must result necessarily in reformation of Bailey's deed subtracting land from lot six. Under what circumstances, then, may the deed to a subsequent purchaser of a lot be reformed when the prior deed for an adjoining lot is reformed because of mutual mistake?

■ The general rule is that reformation will not be granted if it appears such relief will prejudice the rights of bona fide and innocent purchasers. *See* cases collected in 44 A.L.R. 78 (1926), supplemented by 79 A.L.R.2d 1180 (1961). A purchaser must lack notice both of the mistake and of the true intent of the parties, in order to prevent reformation. *Beams v. Werth,* 200 Kan. 532, 438 P.2d 957 (1968). Actual notice however is not required. *Elwood v. Stewart,* 5 Wash. 736, 32 P. 735 (1893). If there are circumstances which ought to put a party on inquiry as to ownership of property, that party is not considered a purchaser without notice and so cannot avoid reformation of the instrument. *Fajen v. Powlus,* 96 Idaho 625, 533 P.2d 746 (1975). *Walters v. Tucker,* 308 S.W.2d 673 (Mo.1957).

■ Another example of this rule is presented by *Deubel v. Dearwester,* 36 Ohio App. 60, 172 N.E. 640 (1930). There the plaintiffs sued to eject the defendant and the defendant counterclaimed to reform the deeds. The original grantor had built improvements on one lot, which improvements encroached upon the adjoining lot. The Ohio Court of Appeals in affirming the trial court's reformation of *both* deeds said:

We think that the physical presence of the house and improvements upon the property conveyed by the original grantor indicated beyond question that the grantor intended to convey all the premises occupied by said improvement to [defendant's] predecessors in title, and, such deed having been made while the original grantor ... still owned both lots, the subsequent grantees of the adjacent lot, now owned by the plaintiffs, took title to such adjacent lot impressed with that intention manifest by the physical occupation of the premises.

Whether a party is aware of circumstances sufficient to put him on inquiry is a question of fact. *Pfleuger v. Hopple,* 66 Idaho 152, 156 P.2d 316 (1945).

■ The question becomes whether Bailey was a bona fide purchaser without notice. On remand the trial court will need to determine whether Bailey was a bona fide purchaser without notice. He bears the burden of proof on this point. *Imig v. McDonald,* 77 Idaho 314, 291 P.2d 852 (1955). If Bailey was not a bona fide purchaser, then Ewing may obtain relief by having both deeds reformed in accordance with the parties' intentions. However, if Bailey is found to be a bona fide purchaser then reformation can be decreed only if

some way is found for Bailey to be satisfactorily and fully compensated. We leave it to the trial court to properly exercise its fact-finding powers and its equitable jurisdiction to fashion a fair and proper solution to the dispute.

Judgment reversed. Cause remanded for proceedings consistent with this opinion. Costs to appellant.

WALTERS, C.J., and BURNETT, J., concur.