855 P.2d 70

Margarete D. MOORE, Plaintiff–Appellant,

v.

Marvin Leroy MULLEN and Kathleen Mullen, Defendants–Respondents,

v.

Washington Federal Savings and Loan Association, Third–Party Defendants,

and

William I. MOORE and Patsy Ann Moore, husband and wife, Third–Party Defendants–Appellants.

No. 19827.

Court of Appeals of Idaho.

June 24, 1993.

Michael G. Pierce, Cascade, for plaintiff-appellant.

Frank T. Elam, McCall, for defendants-respondents.

SILAK, Acting Judge.

Margarete D. Moore (MDM) appeals from a district court judgment and decree that reformed a deed held by Respondents Marvin and Kathleen Mullen (Mullens) to include a ¼ lot deeded to MDM by her son and daughter-in-law William I. and Patsy Ann Moore (Moores). MDM argues that the district court committed clear error when it decreed that there had been a mutual mistake by the Moores and United First Federal Savings and Loan Association (UFFS[1]) when a note and deed of trust were executed to secure a home equity loan. For the following reasons we reverse and remand.

## FACTS AND PROCEEDINGS

MDM acquired 3½ lots on June 28, 1962, consisting of the North ½ of lot 6, and all of lots 7, 8, and 9, of Block 83 in New Meadows, Idaho. On May 18, 1974, MDM transferred to the Moores title to the North ½ of lot 8 and all of lot 9 ("Lot 1"). The Moores erected a prefabricated home on Lot 1 using the proceeds of a loan obtained from UFFS on September 5, 1974. On November 19, 1977, MDM transferred to the Moores title to an additional parcel of land described as the East ½ of the South ½ of lot 8 (the "¼ Lot"). The ¼ Lot is the subject of this appeal.

On August 10, 1980, the Moores applied to UFFS for an additional loan based upon their home equity. On the application the Moores listed both Lot 1 and the ¼ Lot as the legal description of their residence. UFFS had an appraisal completed which listed only Lot 1 as the description. UFFS refinanced the original loan and advanced the Moores additional funds on October 30, 1980. A title insurance policy was issued which described the property covered by the policy as Lot 1. The note and deed of trust taken by UFFS as security for the loan described the subject property as Lot 1.

In June 1982, the Moores filed a handwritten declaration of homestead which contained a description of the ¼ Lot without any reference to Lot 1, the actual location of the house. In September 1984, the Moores obtained a business loan from Idaho First National Bank ("IFNB") secured by a second deed of trust which covered both Lot 1 and the ¼ Lot. In 1985, the Moores filed a petition for bankruptcy which listed the ¼ Lot as the real property securing the UFFS and IFNB loans. On September 25, 1985, the Moores moved out of the house and turned the property over to UFFS. UFFS foreclosed and obtained a trustee's deed to Lot 1 on April 30, 1986.

UFFS put the house and Lot 1 up for sale. In July 1986, the Mullens entered into an agreement to purchase the "Bill Moore property (Presently owned by United First Federal Savings & Loan—legal

1. United First Federal Savings and Loan Association was acquired by Washington Federal Savings and Loan Association which is the actual third-party defendant in this case; however, for clarity we will use UFFS to designate both United First and Washington Federal.

description to be attached)." [2] An appraisal was completed that described the real property as Lot 1. In November 1986, the purchase was completed and the Mullens received a title policy that described the subject property as Lot 1. A note and deed of trust were used to secure a purchase money loan from UFFS which also described the real property as Lot 1.

In April 1989, the Moores sold the ¼ Lot to MDM for $500. In December 1989, MDM had a survey completed which revealed that deck steps and a shed constructed by the Mullens were located on the ¼ Lot. In February 1990, MDM requested, in writing, that the Mullens remove their personal property from the ¼ Lot and in May 1990, MDM erected a fence on the southern boundary of Lot 1. On June 1, 1990, MDM filed this action to quiet title to the ¼ Lot.

The Mullens responded to the complaint and filed counterclaims and third-party complaints. The court allowed the Mullens to amend their original counterclaim to allege grounds for reformation of the deed based upon mutual mistake. Motions for summary judgment were made which resulted in the court dismissing all damage claims against UFFS, but retaining it as a nominal party for the purpose of reforming the deed if necessary and dismissing all other third-party defendants except the Moores. The remaining claims were scheduled for trial; however, the parties stipulated that the matter would be submitted to the court for its decision based upon affidavits, exhibits, and briefs in lieu of trial. Following such submission, the court entered its findings of fact and conclusions of law and decreed that the Mullens' request for reformation of their deed, based on mutual mistake, be granted and denied MDM's quiet title claim. However, the court denied the Mullens' claim of title on the theories of adverse possession and boundary by acquiescence, and also denied all the Mullens' damage claims against MDM and the Moores. A timely appeal was filed by MDM and the Moores, raising the issue whether the district court erred by reforming the deed to the ¼ Lot based upon mutual mistake or by failing to quiet title in MDM.

## REFORMATION OF THE DEED

■ We are called upon to review the district court's decision, as trier of fact, to reform Mullens' deed based upon a theory of mutual mistake. First we note our standard of review. Generally, we will rely on the trial court to weigh the evidence for mutual mistake because it is a factual question which will not be reversed unless the finding of mutual mistake is clearly erroneous. *Cline v. Hoyle & Associates Ins., Inc.*, 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985).

■ MDM's first argument is that the deed given to UFFS is unambiguous as to which lot was being used as security and therefore parol evidence is not admissible. While this is generally true, when mutual mistake is alleged parol evidence is admissible to show that mutual mistakes were made. *Collins v. Parkinson*, 96 Idaho 294, 296, 527 P.2d 1252, 1255 (1974). A court can properly reform an instrument when the evidence shows that "the instrument does not reflect the intentions of the parties and that such failure is the product of a mutual mistake." *Id.* Therefore, the court did not err when it took parol evidence on whether there had been a mutual mistake that would support the reformation of the deed to the ¼ Lot.

Next, MDM argues that the court committed error because she holds legal title to the ¼ Lot and there was no evidence in the record produced at trial to support the court's conclusion that there had been a mutual mistake by the Moores and UFFS. Our Supreme Court has stated that:

> The law presumes that the holder of title to property is the owner thereof. The effect of this presumption is that:
>
> > "[O]ne who would claim the ownership of property of which the legal title stands of record in another ... must establish such claim by evidence that is clear, satisfactory, and convincing."

**2.** The record reveals that the sales agreement had no legal description attached to it.

*Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 579, 548 P.2d 72, 79 (1976) (citations omitted); *Erb v. Kohnke,* 121 Idaho 328, 331, 824 P.2d 903, 906 (Ct.App.1992); *see also Collins,* 96 Idaho at 296, 527 P.2d at 1255 ("a mere preponderance of evidence will not suffice"). It is undisputed that MDM holds a properly-recorded legal title to the ¼ Lot; therefore, the burden was upon the Mullens to show a mutual mistake by clear, satisfactory and convincing evidence. We recognize that the determination whether the burden of proof has been carried is ordinarily for the trial court; however, clear error exists where the record does not contain sufficient evidence to sustain the trial court's findings. *Ballard,* 97 Idaho at 579, 548 P.2d at 79.

■ The Mullens argue that they met this burden because the Moores' loan application and subsequent homestead and bankruptcy filings showed that there was a mistake. A claim of mistake must be "common to both parties in order to be a basis for reformation;" a unilateral mistake is not normally grounds for relief. *Cline,* 108 Idaho at 164, 697 P.2d at 1178. A mutual mistake occurs when both parties, at the time of contracting, have a misconception about a basic assumption or vital fact. *Bailey v. Ewing,* 105 Idaho 636, 639, 671 P.2d 1099, 1102 (Ct.App.1983). We must address whether both the Moores and UFFS were mistaken on October 30, 1980, the date of the loan, as to the description of the real property being used as security for the home equity loan. The Mullens' burden was to show that there was a "failure of the instrument to express the intentions of the parties to the instrument." *Collins,* 96 Idaho at 297, 527 P.2d at 1255. Therefore, we will first review the record to determine if there is substantial evidence to support a finding that UFFS made a mistake; that is, whether UFFS intended the ¼ Lot to be used as security for the October 30, 1980, loan.

The court's findings of fact concerning UFFS's alleged mistake are as follows:

3. About August 10, 1980, the Moore's submitted a residential loan application to United First Federal Savings

(UFFS) which specified: "House on lots North ½ 8–9 BLK 83—East ½ 5½ Lot 8 BLK. 83;" (the 5½ was a typographic error and was clearly intended to be S ½) [Pl. ex. 12(i)]. However, the residential appraisal reports and title policy only listed the property as N ½ of Lot 8, & all Lot 9. [Pl. exs. 12(ii), (iii), & (iv)].

4. About October 30, 1980, the Moores granted a deed of trust, in which UFFS was designated beneficiary; this deed of trust contained a mutual mistake of the Moores and UFFS as to a material fact, in that it described only the Moores' property listed in the appraisal reports and did not include the East ½ South ½ of Lot 8 (the [¼] lot). (Mullen's ex. C).

While we agree that the residential loan application included a description of the ¼ Lot along with Lot 1, the application can be considered as evidence only of the intentions of the Moores, because the application was information provided to the bank by the Moores. This leaves the court's conclusion of law that there was a mistake on the part of UFFS without any findings of fact to support the conclusion. Therefore, we look to the record to determine if the court's conclusion of mutual mistake is supported by substantial evidence.

We have reviewed the record stipulated for trial purposes and conclude there is no evidence to support the conclusion that UFFS had a misconception about what property secured its loan to the Moores. Glen Spottswood ("Spottswood"), UFFS's loan officer in charge of the Moores' loan, submitted an affidavit for trial which detailed the progress of the Moores' loan. Spottswood specifically stated that UFFS "did not intend for the ¼ lot to be included in the Deed of Trust" and that the "legal description of the property encumbered by the Deed of Trust was accurate, and that there was no mistake in the description of the property covered." Spottswood also points out in his affidavit other documents in UFFS's loan file that supported his personal knowledge that the loan was intended to be secured by Lot 1 only. The record does not reflect why the district court failed to address Spottswood's testimony.

The trial court must accept as true the positive, uncontradicted testimony of a credible witness, unless his or her testimony is inherently improbable, or is rendered so by facts and circumstances disclosed at trial. *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 447–48, 74 P.2d 171, 175 (1937); *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979); *Farber v. State Dept. of Transp.,* 107 Idaho 823, 693 P.2d 469 (Ct.App.1984). The burden was on the Mullens to prove by clear, satisfactory, and convincing evidence that there was a mutual mistake. However, in their argument to this Court, the Mullens do not point out any evidence in the trial record to support their contention that "the lending institution thought that they had a security interest in the additional ¼ lot."

We find no evidence in the trial record to support the court's conclusion that UFFS intended to include the ¼ Lot in the deed of trust. Therefore, we hold that the district court's determination that UFFS was mistaken when it had a deed of trust prepared which included only Lot 1 as security for the home equity loan is clearly erroneous because it is not supported by any evidence and, in fact, the evidence is to the contrary. Because we hold that UFFS did not make a mistake, any mistake the Moores might have made would have been unilateral and is not grounds for reformation of the Mullens' deed. *Cline,* 108 Idaho at 164, 697 P.2d at 1178.

## ATTORNEY FEES

The district court awarded attorney fees and costs to Mullens. In view of our reversal of the district court's judgment, we remand to the district court for its determination as to whether to award fees and costs to MDM and the Moores.

As to attorney fees on appeal, we decline to award them under *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). We are not left with the view that the respondents defended this appeal frivolously or unreasonably.

## CONCLUSION

The only evidence of the security UFFS intended to retain for the home equity loan was the affidavit of Glen Spottswood. Without evidence of a mistake by UFFS there can be no reformation by mutual mistake. Therefore, we hold that the district court was in error when it ordered the reformation of Mullens' deed to include the ¼ Lot. The case is remanded to the district court for further proceedings consistent with this opinion.

Costs on appeal to MDM and the Moores. I.A.R. 40.

WALTERS, C.J., and SWANSTROM, J., concur.