936 P.2d 219

**Mel DENNETT, Plaintiff–**
**Counterdefendant–**
**Respondent,**

v.

**Ronald L. KUENZLI and Ida Marie**
**Kuenzli, husband and wife, Defendants–**
**Counterclaimants–Appellants.**

No. 22362.

Court of Appeals of Idaho.

March 10, 1997.

Petition for Review Denied,
May 7, 1997.

Frank W. Stoppello (argued), Boise, for appellants.

Risch, Goss & Insinger, Boise, for respondent. James E. Risch argued.

LANSING, Judge.

This is a dispute over the validity of the exercise of an option to purchase farm property.

## I. FACTS AND PROCEDURAL HISTORY

In March 1984, Mel Dennett entered into an agreement with Ronald L. and Ida Marie Kuenzli for the sale of farm property. Although Dennett's initial asking price was $400,000, he agreed to sell the land to the Kuenzlis for $300,000. The purchase price, plus interest, was payable in twenty annual installments. The agreement provided that if the Kuenzlis prepaid the balance at any time during the life of the contract they would also be required to pay a $100,000 prepayment penalty. The parties appointed an escrow agent to hold the conveyance documents and to process the payments.

Approximately four months later, in July of 1984, the parties executed an option agreement giving Dennett the right to repurchase the same real property at any time during the existence of the escrow. By terms of the option agreement, if Dennett elected to repurchase the property he would be required to pay the amount of all principal and interest previously paid by the Kuenzlis, plus the principal balance that was yet unpaid by them (which would, by offset, effectively cancel the Kuenzlis' liability for the balance under the original sale contract), plus $15,000.

During the fall of 1993, the Kuenzlis discovered that the farm property had greatly increased in value. To enjoy the benefit of this appreciation, the Kuenzlis decided to sell the property. Before doing so, in October 1993, the Kuenzlis called Dennett to inform him of their intention to list the property with a real estate agent and to inquire whether it would cause adverse tax consequences for Dennett if the Kuenzlis were to prepay the contract balance. Dennett did not express any opposition to the sale of the property and said that he would not suffer any tax disadvantages from prepayment. On December 7, 1993, the Kuenzlis entered into an earnest money agreement to sell the property to a third party for $975,000. However, two days later Dennett gave the Kuenzlis written notice that he was exercising his right to repurchase the property under the option agreement. In response, the Kuenzlis attempted to terminate Dennett's right to exercise the option by prepaying the remaining purchase price, including the $100,000 prepayment penalty, but this payment was refused by the escrow agent at Dennett's instruction. Dennett then tendered the amount required for exercise of the option and demanded that the Kuenzlis convey the property to him. The Kuenzlis refused. Consequently, Dennett brought an action seeking specific performance of the option agreement. The Kuenzlis counterclaimed requesting specific performance of the land sale contract or, alternatively, damages. Following a court trial, the district court granted judgment to Dennett and ordered that the Kuenzlis perform pursuant to the terms of the option agreement.

## II. ISSUES ON APPEAL

On appeal, the Kuenzlis contend: (1) that the option agreement was not supported by consideration; (2) that the option agreement was modified, giving the Kuenzlis the right to sell the farm property without Dennett's interference through exercise of the option; (3) that Dennett was precluded from exercising the option based upon waiver, estoppel, and unclean hands; (4) that the agreement should be reformed based on mutual or unilateral mistake; (5) that the option agreement contains an ambiguous term that should have been interpreted in favor of the Kuenzlis; (6) that Dennett lost his right to exercise the option when he assigned his interest in it to a living trust; and (7) that

the district court erred in awarding attorney fees to Dennett.

## III. STANDARD OF REVIEW

■ It is well established that this Court's review of a decision following a court trial is limited to ascertaining whether the evidence supports the trial court's findings of fact, and whether those findings of fact support the conclusions of law. I.R.C.P. 52(a); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949–50, 812 P.2d 253, 256–7 (1991). In *Ficarro v. McCoy*, 126 Idaho 122, 879 P.2d 30 (Ct.App. 1994), we outlined the appellate court's task in such cases:

> With respect to the findings of fact, the Idaho Rules of Civil Procedure provide that "In all actions tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous." I.R.C.P. 52(a). Thus, our task when reviewing factual findings is not to weigh the evidence nor to substitute our own view of the facts for that of the trial judge. Our task is simply to determine whether the factual findings are supported by substantial, albeit conflicting, evidence in the record. If so, the findings cannot be said to be clearly erroneous. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). We regard evidence as "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Ortiz v. State, Dept. of Health and Welfare*, 113 Idaho 682, 684, 747 P.2d 91, 93 (Ct.App.1987).

*Id.* at 125, 879 P.2d at 33. This standard of review reflects the deference that is afforded to "the trial court's special opportunity to assess and weigh the credibility of the witnesses who appear before it personally." *Rueth v. State*, 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982). Conversely, the standard of review applied when assessing the district court's conclusions of law is not deferential. We exercise free review in determining the appropriate legal rules and in applying them to the facts found. *Ficarro*, 126 Idaho at 126, 879 P.2d at 34; *Staggie v. Idaho Falls Consol. Hospitals*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986).

## IV. ANALYSIS

### A. Adequacy of Consideration

The Kuenzlis contend that the district court erred in finding that the option contract exercised by Dennett was supported by adequate consideration. Although the option agreement recited that the option was granted "in consideration of the sum of ONE ($1.00) DOLLAR, and other good and valuable consideration, the receipt for which is hereby acknowledged," the Kuenzlis contend that Dennett did not pay the recited consideration. They assert that as a consequence of this lack of consideration, the agreement is unenforceable.

■ Idaho Code Section 29–103 provides that "[a] written instrument is presumptive evidence of a consideration." *See also Lewis v. Fletcher*, 101 Idaho 530, 531, 617 P.2d 834, 835 (1980). Once raised, however, this presumption may be rebutted by the party seeking to assert the defense of lack of consideration. Idaho Code § 29–104 specifies that, "The burden of showing want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." Under this statute both the burden of going forward with evidence and the burden of persuasion rest upon the party contesting the adequacy of the consideration. *W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 741, 653 P.2d 791, 796 (1982) (holding that the party asserting the affirmative defense of lack of consideration must establish that defense by a preponderance of the evidence); *Rosenberry v. Clark*, 85 Idaho 317, 379 P.2d 638 (1963) (holding that the defense of want or failure of consideration is an affirmative defense and the burden to show lack of consideration to support an instrument lies with the one seeking to avoid it).

■ In this case, the record supports the district court's finding that the Kuenzlis failed to meet their burden of proof. The evidence does not establish, as argued by the Kuenzlis, that Dennett failed to give the recited consideration. Rather, the record demonstrates that, ten years after the fact, no one involved had a clear memory of every-

thing that transpired in completing the transaction. Moreover, there was more than just the Section 29–103 presumption that weighed against the Kuenzlis' assertion of lack of consideration. In this case, the instrument itself represented that "good and valuable consideration" had been given and contained a written acknowledgement by the Kuenzlis of the receipt of such consideration. Accordingly, the district court's determination that the option contract was supported by valid consideration was based on substantial and competent evidence.

## B. Modification of the Option Agreement

We next consider the Kuenzlis' contention that the district court erred when it rejected their argument that the option contract had been orally modified. According to the Kuenzlis, the original option contract was modified when Mel Dennett, during a telephone conversation with Ronald Kuenzli, assented to the Kuenzlis' proposal to sell the farm property. They argue that the conversation, which occurred in October of 1993, amounted to an oral modification of the option agreement and that Dennett's subsequent exercise of the option was a breach of the agreement as modified.

■■■ A written contract may be modified or waived by a subsequent oral agreement. *Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). In addition, the modification of an agreement "may be implied from a course of conduct in accordance with its existence and assent may be implied from the acts of one party in accordance with the terms of the change proposed by the other." *Ore–Ida Potato Products Inc. v. Larsen*, 83 Idaho 290, 296, 362 P.2d 384, 387 (1961). The question, however, of whether such an oral modification has been proven is one for the trier of fact. *Strate v. Cambridge Tel. Co. Inc.*, 118 Idaho 157, 161, 795 P.2d 319, 323 (Ct.App.1990). Here, the district court found that there was inadequate evidence to prove that a modification occurred:

> While the evidence suggests that Dennett was aware that the Kuenzlis had the property for sale and that he probably told Mr. Kuenzli that he did not care whether they listed the property for sale, there is insuffi-

cient evidence from which the court may find that Dennett ever led the Kuenzlis to believe that he was not going to exercise his option to purchase should the Kuenzlis find a buyer. At best the Kuenzlis showed that they hoped Dennett would not exercise his option. . . .

We agree with the trial court that the absence of an objection by Dennett to the Kuenzlis' listing the property for sale does not amount to an express or implied promise that he would not exercise the option. The district court's determination that the option contract was not modified by oral agreement is affirmed.

## C. Waiver, Quasi Estoppel and Unclean Hands

The Kuenzlis next challenge the district court's rejection of their defenses of waiver, estoppel and unclean hands. These defenses, like their contract modification argument, are based upon the October 1993 telephone conversation.

■■■ First, the Kuenzlis contend that Dennett waived his option right when he failed to object to their efforts to sell the farm property. A waiver is a voluntary, intentional relinquishment of a known right or advantage. The party asserting the waiver must show that he has acted in reliance upon such a waiver and reasonably altered his position to his detriment. *Brand S Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981); *see also Scott*, 104 Idaho at 725, 662 P.2d at 1169. Here, as we have already determined, the district court properly found that Dennett did not promise or lead the Kuenzlis to believe that he would not exercise his option to purchase the property. It follows that he did not voluntarily and intentionally relinquish his right to exercise the option.

■■■ The Kuenzlis' quasi estoppel argument fails for the same reason. Quasi estoppel is a broad remedial doctrine "designed to prevent a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions." *Schiewe v. Farwell*, 125 Idaho 70, 74, 867 P.2d 944, 948

(Ct.App.1992). Unlike equitable estoppel, quasi estoppel does not require misrepresentation by one party or actual reliance by the other. It simply requires that "the person against whom the estoppel is sought must have gained some advantage for himself ...; in addition it must be unconscionable to allow the person against whom the estoppel is sought to maintain a position which is inconsistent with the one in which he accepted the benefit." *Id.* In order to successfully employ the quasi estoppel doctrine, the Kuenzlis had the burden of demonstrating, among other things, that Dennett actually maintained inconsistent positions. The district court properly found that this element was not proven because Dennett never took the position that he would refrain from exercising the option.

The Kuenzlis have also raised the equitable doctrine of unclean hands. This doctrine is based on the maxim that, "he who comes into equity must come with clean hands." *Gilbert v. Nampa School Dist. No. 131,* 104 Idaho 137, 145, 657 P.2d 1, 9 (1983). It allows a court to deny equitable relief to a litigant on the ground that his conduct has been "inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue." *Gilbert, supra; see also Hoopes v. Hoopes,* 124 Idaho 518, 522, 861 P.2d 88, 92 (Ct.App.1993); 27 Am.Jur.2d. Equity § 126 (1996). A trial court's decision to afford relief based on the unclean hands doctrine, or to reject its application, will not be overturned on appeal absent a demonstration that the lower court abused its discretion. *Gilbert,* 104 Idaho at 145–46, 657 P.2d at 9–10. We find that the record supports the district court's conclusion that "[t]here is insufficient evidence of any acts or omissions by Dennett to justify the imposition of the doctrine of unclean hands to prevent specific performance of the option." Accordingly, we affirm the district court's decision.

### D. Mutual Mistake

The Kuenzlis also challenge the district court's conclusion that they failed to satisfy the burden of proof on their claim that the option agreement should be reformed due to mutual mistake.

A mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence. *Bailey v. Ewing,* 105 Idaho 636, 639, 671 P.2d 1099, 1102 (Ct. App.1983), *citing* WILLISTON ON CONTRACTS § 1535 (3rd ed.1970). A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain. *Moore v. Mullen,* 123 Idaho 985, 988, 855 P.2d 70, 73 (Ct.App. 1993). The mistake must be so substantial and fundamental as to defeat the object of the parties. *Bailey,* 105 Idaho at 639, 671 P.2d at 1102. The occurrence of a mutual mistake must be proven by clear and satisfactory evidence, not by a mere preponderance of the evidence. *Metropolitan Life Ins. Co. v. McClelland,* 57 Idaho 139, 144, 63 P.2d 657, 658 (1936); *Mutual of Enumclaw Ins. Co. v. Wood By–Products Inc.,* 107 Idaho 1024, 1027, 695 P.2d 409, 412 (Ct.App.1984).

The Kuenzlis assert that a key provision of the option agreement was omitted due to a mutual mistake by the parties. They presented evidence that some drafts of the option contract which were prepared as part of the negotiation process, including the draft the parties finally agreed upon, contained a clause that was omitted from the final version signed by the parties. The Kuenzlis characterize this clause as one requiring that Dennett give thirty days' notice before exercising the option. The provision in question, as found in an unexecuted draft, stated:

> If and when [Dennett] desires to exercise this option, he shall notify [the Kuenzlis] in writing of his desire and, within thirty (30) days thereafter, the parties agree to enter into the Escrow Contract attached hereto and by reference incorporated herein.

The Kuenzlis argue that the provision was excluded by accident when both parties failed to read the final version of the contract at the time of signing. They contend that this mutual mistake can only be remedied by reforming the agreement to include the erroneously omitted term. According to the Kuenzlis, with this reformation of the option agreement, they were entitled to thirty days' notice before Dennett could exercise the op-

tion. This would have given them an opportunity to prepay the purchase price and thereby terminate Dennett's rights under the option contract. Since they did tender the full prepayment amount within thirty days of Dennett's exercise of the option, they contend that his option rights were extinguished. We are not persuaded.

The district court concluded, and we agree, that even if the omitted clause had been included in the executed version of the option contract, it would not have had the effect the Kuenzlis seek. The provision does not require that the Kuenzlis be given advance notice before exercise of the option, nor does it provide them a means to avoid the consequences of the option once it has been exercised. Instead, it merely specifies the time period within which the parties are to execute the necessary documents to effectuate the sale back to Dennett following the exercise of the option. Therefore, the question as to whether the omitted term was intended by both parties to be in the final contract is irrelevant to the disposition of this litigation.

### E. Unilateral Mistake

The Kuenzlis also rely upon the doctrine of unilateral mistake. They contend that their misconception about the terms of the option contract, even if the misconception was not shared by Dennett, requires reformation of the agreement. To the extent that this claim rests upon the same thirty-day provision as the claim of mutual mistake, it fails for the same reason—the clause which the Kuenzlis' allegedly believed was in the contract would not have given them a right to notice before Dennett's exercise of the option.

■■■ Assuming, however, that the Kuenzlis' unilateral mistake claim is based upon not only the omission of the written thirty-day provision but also upon their own mistaken belief that the provision would have entitled them to notice before exercise of the option, the evidence is insufficient to establish the elements of the claim. Under Idaho law, a contracting party who makes a mistake unilaterally cannot rescind or modify the contract unless there has been a misrepresentation or knowledge of the mistake by the other party. *Cline v. Hoyle & Assoc.*

*Ins., Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985); *Cohen v. Merrill,* 95 Idaho 99, 104, 503 P.2d 299, 304 (1972). *See also Moran v. Copeman,* 55 Idaho 785, 792, 47 P.2d 920, 923 (1935); *Moore,* 123 Idaho at 988, 855 P.2d at 73. In this case, the Kuenzlis provided no evidence that Dennett made any misrepresentations about the content of the option contract or that he had knowledge of the Dennett's alleged mistaken belief.

■■■ The Kuenzlis urge us to adopt the view of the RESTATEMENT (SECOND) OF CONTRACTS § 153(a) (1981), which allows a party to avoid a contract for unilateral mistake not only when the other party knew about the mistake, but also when the court determines that the consequences of the mistake are such that enforcement of the contract would be unconscionable. Even if we were free to thus modify precedent established by decisions of our Supreme Court, it would be of no benefit to the Kuenzlis. The district court found, and we agree, that the option contract, as written, is not unconscionable. As the district court stated:

> The Kuenzlis contend that the option agreement was unconscionable and that the manner in which Dennett exercised his option was unconscionable. There is insufficient evidence to support such a finding. Each side was represented by an accountant and an attorney when the option agreement was negotiated. Both Mr. Dennett and Mr. Kuenzli were experienced farmers. There was no way of telling to a certainty in 1984 whether the bargain was a good one or a bad one for Dennett or for the Kuenzlis. While recent history shows an overall increase in value of Ada County farmland and 20–20 hindsight shows that Dennett may benefit from the deal more than the Kuenzlis, it also must be remembered that exercise of the option means that the Kuenzlis will get all their money back plus $15,000.00 and in addition will have had the exclusive use and benefit of the property free of charge for over ten years. They also will receive 9% interest on the unpaid balance of the option price.

Although the option agreement may have turned out to be disadvantageous to the Kuenzlis, due to the appreciation in the value

of the property, it is not unconscionable. The district court's denial of the Kuenzlis' claim of unilateral mistake is not erroneous.

## F. Ambiguity

The Kuenzlis' next argument is that the district court should have determined that the option contract was ambiguous and should have interpreted the ambiguous term so as to require notice to the Kuenzlis before Dennett could exercise the option. The portion of the contract at issue states:

> If and when [Dennett] desires to exercise this Option, he shall first notify [the Kuenzlis] in writing of his desire and immediately thereafter the parties agree to enter into an escrow contract. . . .

The Kuenzlis aver that the term "immediately" in that clause is ambiguous because it is subject to "innumerable" interpretations and that in view of this ambiguity, the district court was obligated to interpret the contract in accordance with the intent of the parties.

The determination of whether a contract is ambiguous is a decision of law which is subject to free review on appeal. *Bondy v. Levy*, 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992); *Chittenden & Eastman Co. v. Leasure*, 116 Idaho 981, 982, 783 P.2d 320, 321 (Ct.App.1989); *Clearwater Minerals Corp. v. Presnell*, 111 Idaho 945, 948, 729 P.2d 420, 423 (Ct.App.1986). If the contract is found to be ambiguous, the "interpretation of the document is a question of fact which focuses on the intent of the parties." *Ada County Assessor v. Taylor*, 124 Idaho 550, 553, 861 P.2d 1215, 1218 (1993). If, however, the contract is clear and unambiguous, its meaning is a question of law. *Bondy*, 121 Idaho at 997, 829 P.2d at 1346; *Galaxy Outdoor Advertising, Inc. v. Idaho Transp. Dep't*, 109 Idaho 692, 695, 710 P.2d 602, 605 (1985). In making the threshold determination of whether a contract is ambiguous, "our task is to ascertain whether the contract is reasonably subject to conflicting interpretation."

*Bondy*, 121 Idaho at 997, 829 P.2d at 1346; *Spencer–Steed v. Spencer*, 115 Idaho 338, 766 P.2d 1219 (1988).

█ Although the word "immediately," is not a term of great precision, it does have a meaning that is commonly understood and sufficiently unambiguous to be enforceable. This was addressed in *State v. Bitz*, 89 Idaho 181, 188, 404 P.2d 628, 632 (1965), where the Idaho Supreme Court determined that "immediately," as used in a statute, means: "within such reasonable time as is requisite for doing a thing." We conclude that this definition comports with common usage and is, therefore, equally ascribable to the word "immediately" when it is used in a contract. It appears that other jurisdictions, when faced with this issue, have uniformly reached similar conclusions. *See, e.g., Liberty Mutual Ins. v. Bob Roberts and Co.*, 357 So.2d 968, 970 (Ala.1978) (holding that the term "immediately" means " 'within a reasonable time' in view of all the facts and circumstances of the case"); *Integrated, Inc. v. Alec Fergusson Elec. Contractors*, 250 Cal.App.2d 287, 58 Cal.Rptr. 503, 508–509 (1967) (stating that "immediately" means "within a reasonable time having due regard to the nature and circumstances of the case."); *Bituminous Casualty Corp v. J.B. Forrest & Sons, Inc., et al*, 132 Ga.App. 714, 209 S.E.2d. 6, 9 (Ga.Ct.App.1974) (holding that "immediately" means "within a reasonable length of time in view of attending circumstances of each particular case."); *Kenworthy v. Bituminous Casualty Corp.*, 28 Ill.App.3d 546, 328 N.E.2d 588 (1975) (determining that "immediate" means "within a reasonable time, taking into consideration all of the facts and circumstances shown by the evidence."); *Pioneer Casualty Co. v. Blackwell*, 383 S.W.2d 216, 219 (Tex.Ct.App.1964) (holding that "immediately" means within a reasonable time under the circumstances). We find no error in the district court's conclusion that the option contract was clear and unambiguous.[1]

---

1. Further, we would once again point out that the clause in question, even if found to be ambiguous, would not bear the interpretation advanced by the Kuenzlis. They assert that the clause was intended to require Dennett to provide notice before exercising the option so as to allow the Kuenzlis thirty days within which to prepay the

purchase price under the March 27, 1984, sale agreement and terminate the option. The term "immediately" plainly refers to the time period *after* Dennett has notified the Kuenzlis of his exercise of the option within which the Kuenzlis must reconvey the property to Dennett through an appropriate escrow contract; it does not refer

## G. Effect of the Assignment

We must next consider the effect, if any, on Dennett's right to exercise the option that was *occasioned by his assignment of the op*tion contract to himself as a trustee.

The contract had an anti-assignment clause which provided: "This option agreement is not assignable by either party hereto." Despite this provision, in September 1993, Dennett and his wife executed a document assigning all of their interest in the farm property, including their rights under the option agreement, to Dennett as trustee of the Mel Dennett Living Trust. In December 1993, however, when Dennett informed the Kuenzlis in writing that he was exercising the option, he signed the document in his own name without mention of the trust. The district court held that the assignment was invalid because it was contrary to the anti-assignment clause. Because the attempted assignment was thus deemed void, the district court further determined that Dennett had retained all of the rights under the option contract and, therefore, had the power to exercise the option in his individual capacity.

On appeal, the Kuenzlis argue that the district court erred in holding that the assignment was void. They contend that the assignment was valid and transferred all of Dennett's interest in the option to the trust, leaving him without authority to exercise the option in his individual capacity. It follows, they argue, that because Dennett did not exercise the option in his capacity as a trustee, the attempted exercise of the option failed. The Kuenzlis make the same argument with regard to Dennett's authority to prosecute this lawsuit—they assert that Dennett is not the real party in interest and does not have the authority to bring, or continue, this lawsuit in his own name.

In support of their contention that the assignment was effective, notwithstanding the violation of the anti-assignment clause, the Kuenzlis rely upon the RESTATEMENT OF CONTRACTS (SECOND) § 322(2) which states in pertinent part:

to a notice period within which the Kuenzlis may

(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

. . . .

(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective; . . . .

*See also* E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 11.4 (1990); John D. Calamari & Joseph M. Perillo, CONTRACTS § 18–14 (2d ed.1977).

■ Assuming, without deciding, that the Kuenzlis are correct in their assertion that the assignment was effective, such conclusion does not lead to the result that the Kuenzlis desire. As will be seen, even if Dennett held the option in his capacity as trustee of the Mel Dennett Living Trust, the option was effectively exercised in this case. It was not necessary that Dennett identify himself as a trustee or disclose the trust's interest in order to exercise the option.

■ The Kuenzlis' argument that Dennett could not exercise the option while acting in his own name stems from a misapprehension that, after the assignment, the option right "belonged" to the trust. In actuality, a trust is not a legal "person" which can own property or enter into contracts. *See* W.W. Allen, Annotation, *Contract of Trustee as Basis of Suit to Reach the Trust Estate or to Charge the Trustee Personally or as Trustee*, 139 A.L.R. 134, 137 (1942). Rather, a trust is a *relationship* having certain characteristics. The RESTATEMENT (SECOND) OF TRUSTS § 2 (1959) defines a trust as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *See also Estate of Hull v. Williams*, 126 Idaho 437, 443, 885 P.2d 1153, 1159 (Ct.App. 1994) (stating a trust is "a fiduciary relationship in which one person is the holder of legal title to the property subject to the beneficial interest of another"); Austin Wakeman Scott & William F. Fratcher,

defeat Dennett's interest.

SCOTT ON TRUSTS §§ 2.3, 2.4 (4th ed.1989) (hereinafter SCOTT).

Thus, it is the trustee or trustees who hold title to the assets that make up the trust estate and who enter into contracts necessary to the management of the estate, subject to fiduciary obligations to manage and use the assets for the benefit of the trust beneficiary. Indeed, at common law, a trustee was deemed to be personally liable on a contract made for the benefit of the estate, absent the expression of a contrary intent in the contract, with the trustee entitled to indemnity from the trust estate for the liability thereby incurred. RESTATEMENT (SECOND) OF TRUSTS §§ 261–63, 244, 246; A.P. Loring, A TRUSTEE'S HANDBOOK 92–93 (4th ed.1928); Allen, *supra*, at 134–35. This rule has been statutorily modified in Idaho by I.C. § 15–7–306(a), which states, "Unless otherwise provided in the contract, a trustee is not personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he fails to reveal his representative capacity and identify the trust estate in the contract." This statutory modification of the common law rule does not, however, alter the trustee's status as the holder of title to the assets in the trust estate, nor does it make it necessary for the trustee to disclose his fiduciary capacity in executing documents that affect the trust estate. By implication, the statute recognizes that a trustee may effectively enter into contracts for trust purposes without such disclosure.

We hold, therefore, that Dennett's exercise of the option in his own name was effective even if the option right was held by him subject to his fiduciary obligation as trustee.

Similarly, a trustee may bring legal actions in his own name regarding property or contract interests of the trust estate. On this point, a commentator has stated:

> By the weight of authority it is held that in an action brought by the trustee against a third person, whether for a tort with respect to the trust property or on a contract held by him in trust, it is unnecessary for the trustee in the pleadings or other proceedings to describe himself as trustee. As far as the third person is concerned, it is immaterial whether the plaintiff is suing on his own account or as trustee. If the trustee does describe himself as trustee the description is treated as surplusage. It is true that whatever is recovered by the trustee in the action, he will hold subject to the trust; but with this the defendant is not concerned.

SCOTT, § 280.6. *See also* RESTATEMENT (SECOND) OF TRUSTS § 280 cmt. h (1959) (stating that it is unnecessary for a trustee to describe himself as a trustee in the pleadings or other proceedings and that such a description is treated as surplusage); George G. Bogert, TRUSTS & TRUSTEES (2nd ed.1980) (stating that a trustee may bring a suit in his own name); Loring, *supra*, (same).

Accordingly, we conclude that Dennett was not required to refer to himself as the trustee of the Mel Dennett Living Trust in order to act in that capacity in exercising the option. We conclude, as well, that Dennett is the real party in interest as plaintiff in this action. Therefore, although we rely on different grounds than did the district court, we affirm the district court's determination that Dennett's assignment of the option right did not render his exercise of the option ineffective.

### H. Attorney Fees

The Kuenzlis have also challenged the district court's decision awarding attorney fees to Dennett pursuant to I.C. § 12–120(3). That statute mandates an award of attorney fees to the prevailing party in any civil action to recover on "any commercial transaction." "Commercial transaction" is defined as "all transactions except transactions for personal or household purposes." *Id.* The test for application of this statutory directive is "whether the commercial transaction comprises the gravamen of the lawsuit, that is, whether the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover." *Spence v. Howell,* 126 Idaho 763, 776, 890 P.2d 714, 727 (1995); *Brower v. E.I. DuPont De Nemours and Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

The Kuenzlis argue that the option agreement at issue here was not a commercial transaction. We disagree. In *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 274–75, 869 P.2d 1365, 1369–70 (1994), the Idaho Supreme Court held that a transaction to finance the purchase of real property which was intended to be used for commercial farming operations was a commercial transaction under I.C. § 12–120(3). Similarly, this Court determined that attorney fees were properly awarded under I.C. § 12–120(3) in litigation involving the lease of cattle ranch property. *Herrick v. Leuzinger*, 127 Idaho 293, 306, 900 P.2d 201, 214 (Ct. App.1995). Here, the gravamen of the plaintiff's claim has been the enforcement of an option to purchase commercial farming property. The action also included the Kuenzlis' counterclaim alleging a right to damages for breach of the option contract and breach of the March 1984 contract for the sale of the same property. The district court was, therefore, correct in holding that a commercial transaction was the basis of the lawsuit and in granting attorney fees to Dennett.

Because I.C. § 12–120(3) applies to attorney fees incurred on appeal as well as at trial, *Farm Credit Bank*, 125 Idaho at 275, 869 P.2d at 1370; *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992); *Spidell v. Jenkins*, 111 Idaho 857, 727 P.2d 1285 (Ct.App.1986), we also award to Dennett reasonable attorney fees on appeal.

## IV. CONCLUSION

We affirm the judgment of the district court requiring specific performance of the option contract, and we award costs and attorney fees to respondent pursuant to I.A.R 40 and 41 and I.C. § 12–120(3).

WALTERS, C.J., and PERRY, J., concur.