**UNITED STATES of America,**
**Plaintiff-counter-defendant/appellee,**

**v.**

**James S. FOWLER, Sr.; Halle W. Fowler,**
**Defendant-counter-claim-third-party**
**plaintiffs/appellants.**

**James S. FOWLER, Jr.; Robyn Fowler,**
**Third-party plaintiffs/appellants,**

**v.**

**ANDERSON–BLAKE–FAY INSURANCE**
**COMPANY, INC., Third-party**
**defendant/appellee.**

**No. 89–35806.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1990.

Decided Sept. 7, 1990.

**1384**

R. Keith Roark, Roark, Donovan, Praggastis, Elkins and Phillips, Ketchum, Idaho, for defendants-counter-claim-third-party plaintiffs/appellants.

Paige Alan Parker, Imhoff and Lynch, Boise, Idaho, for third-party defendant/appellee.

Andrea M. Pogue, Asst. U.S. Atty., Boise, Idaho, for plaintiff-counter-defendant/appellee.

Before HUG, D.W. NELSON and BRUNETTI, Circuit Judges.

## OVERVIEW

D.W. NELSON, Circuit Judge:

The Fowlers, appellants in the instant case, suffered flood damage on their property. They had sought flood insurance for the property through appellee ABF, their insurance company, and ABF had applied for a policy from the government's National Flood Insurance Program. Although it was determined that the Fowlers were not eligible for the program, a policy was nevertheless issued and the government erroneously paid the Fowlers for their loss. Later, after an audit of the Flood Insurance Program, the erroneous payment was discovered and the government brought an action against the Fowlers to recover payment. The Fowlers brought a third-party complaint against ABF and counterclaimed against the United States on the basis of negligence. The district court granted summary judgment to ABF because the Fowlers had signed a liability release. The district court also granted summary judgment to the United States, finding that the government had not waived its right to reimbursement and was not estopped. The court dismissed the Fowlers' counterclaim because it fell within the misrepresentation exception under the Tort Claims Act. This appeal followed.

## FACTUAL AND PROCEDURAL HISTORY

James S. Fowler, Sr., Halle W. Fowler, James S. Fowler, Jr., and Robyn Fowler (the Fowlers) owned adjacent property on the Snake River and Salmon Falls Creek in Hagerman, Idaho. On April 26, 1984 the Fowlers procured flood insurance for three buildings on the properties through Anderson–Blake–Fay Insurance Company (ABF). ABF applied for the policy from the United States' National Flood Insurance Program (NFIP or United States). Immediately afterward the Fowlers left for Alaska. Ten days later ABF determined that the address on the insurance application listed the incorrect county and that, in fact, the Fowlers' property was in a county that was ineligible for federal flood insurance. ABF sent three cancellation/nullification request forms to the NFIP indicating the true property location, explaining the mistake and stating that the property was not eligible for coverage. The NFIP returned the forms to ABF because, at the time they were submitted, no policy number had been assigned yet to the flood insurance applications. ABF did not resubmit the cancellation/nullification forms. ABF also did not contact the Fowlers on the phone or through the mail about the cancellation of their insurance.[1] The Fowlers returned from Alaska on May 11 or 12, 1984.

The Salmon Falls Creek flooded on May 16, 1984, damaging the property owned by James Fowler, Sr. and his wife. On that same day, James Fowler, Jr. called ABF and was informed that the property was not insured. The Fowlers retained an attorney who began negotiations with ABF. On May 21, 1984 ABF submitted two claims to the government. In processing the claims the NFIP assigned the two claims to separate claim examiners. One examiner correctly denied the smaller of the two claims because the property was in an ineligible county. On November 29, 1984 another examiner erroneously issued two checks totaling $23,237.86 to the Fowlers on the second claim.

---

**1.** There is a factual dispute over whether ABF      even attempted to reach the Fowlers by phone.

On May 16, 1985 the Fowlers and ABF began negotiating over the claim rejected by the NFIP. On February 2, 1986 James Fowler, Sr., signed a release of all claims arising out of the flood against ABF in return for ABF's payment of $5,500.

On October 30, 1986 the Fowlers were notified by letter from the NFIP that an audit had revealed the mistaken payment and that the United States was demanding repayment of the $23,237.86. The Fowlers filed an action against ABF in state court alleging negligence, breach of contract, fraud and misrepresentation. After the Fowlers amended their complaint to add the Government as a co-defendant, the case was removed to federal court and consolidated with the Government's collection action against the Fowlers. In that collection action the Fowlers filed a third-party complaint against ABF repeating the same claims asserted in the state action. The Fowlers also filed a counterclaim against the United States seeking damages for negligence in processing and paying the flood damages. The district court granted summary judgment to the United States on its claim for reimbursement and on its motion to dismiss the counterclaim. The district court also granted summary judgment in favor of ABF on the Fowlers' third-party complaint. The disposition of these motions resolved all the issues in the case and the Fowlers then timely appealed to this court.

## DISCUSSION

### I. Standard of Review

■ A grant of summary judgment is reviewed de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

### II. United States

#### A. Reimbursement Claim

It is undisputed that the Fowlers' property was ineligible for NFIP coverage as a matter of law and that the United States erroneously paid the Fowlers for flood damage on their property. The Fowlers argue, however, that the United States is estopped from seeking reimbursement or, alternatively, has waived its right to reimbursement. We disagree and affirm the district court's order granting the United States' motion for summary judgment against the Fowlers on its claim for reimbursement of the flood insurance proceeds.

#### 1. Equitable Estoppel

■ The Ninth Circuit "has held that 'where justice and fair play require it, estoppel will be applied against the government.'" *Watkins v. United States Army,* 875 F.2d 699, 706 (9th Cir.1989) (en banc) (quoting *Johnson v. Williford,* 682 F.2d 868, 871 (9th Cir.1982)). However, "the federal government 'may not be estopped on the same terms as any other litigant.'" *Wagner v. Dir., Fed. Emergency Management Agency,* 847 F.2d 515, 519 (9th Cir. 1988) (quoting *Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). Specifically, "claims for estoppel [against the government] cannot be entertained where public money is at stake." *Office of Personnel Management v. Richmond,* — U.S. —, 110 S.Ct. 2465, 2473, 110 L.Ed.2d 387 (1990). Because the Appropriations Clause of the Constitution, Art. I, § 9, cl. 7, limited the payment of money from the Treasury to that authorized by statute, the Supreme Court in *Richmond* held that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." *Id.,* 110 S.Ct. at 2472.

■ It is undisputed that the Fowlers' property was not eligible for flood insurance under the National Flood Insurance

**1386**

Act.[2] 42 U.S.C. §§ 4001–4128 (1989). Thus, if we were to permit the Fowlers to estop the United States, we would be permitting them to retain public funds that Congress had not appropriated. We have no authority to grant such an expenditure. In this context, the United States cannot be estopped.

### 2. Waiver

■ Appellants claim that the United States waived its right to reimbursement by voluntary payment of the claim.[3] They argue that the Court must rely on standard insurance law and contract principles to determine the waiver issue and that under this law voluntary payment of an insurance claim waives any right to reimbursement. The government contends that the general state doctrines of waiver are not applicable when the insurer is the United States because the agents in this case were acting outside their scope of authority which cannot bind the United States.

The Fowlers are correct that in suits interpreting a federal flood insurance policy, the appellate court "shall apply the 'traditional common-law technique of decision' by drawing upon standard insurance law principles." *Brazil v. Giuffrida*, 763 F.2d 1072, 1075 (9th Cir.1985) (quoting *West v. Harris*, 573 F.2d 873, 881 (5th Cir.1978)). However, whether the government has waived its right to reimbursement by paying the Fowlers is not a question involving interpretation of the provisions of an insurance policy, for which the court would look to standard insurance law provisions. Instead, in this case, the court is determining whether conduct of government agents that is contrary to law can bind the government; specifically, the court must decide whether agents can expand the coverage of an insurance program beyond Congress' mandate by providing benefits to an ineligible party. To determine this question the courts look to federal law rather than state insurance law. *See, e.g., Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218 (applying federal law); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 n. 1, 68 S.Ct. 1, 3 n. 1, 92 L.Ed. 10 (1947) ("[R]ules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency...").

Under federal law, it is clear that the flood examiner's error did not waive the United States' right to reimbursement. The Supreme Court has held in a number of cases that "the United States is neither bound nor estopped by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or

---

**2.** Under the National Flood Insurance Act, Congress provided flood insurance coverage to eligible properties. 42 U.S.C. §§ 4001–4128 (1989). What constitutes an eligible property is determined by the Director of the Federal Emergency Management Agency. 42 U.S.C. § 4013(a)(1). In the instant case, the Director had determined that property located in Twin Falls County was not eligible for the National Flood Insurance Program. The Fowlers' property was in Twin Falls.

**3.** The district court did not decide the waiver issue separately, holding instead that "[u]nder the circumstances of this case, the defenses of waiver and estoppel dovetail.... [I]f estoppel falls, waiver follows."

The mere existence of common elements in the defenses of waiver and estoppel does not permit the district court to dismiss the waiver defense without separate consideration. The Supreme Court in *Lyng v. Payne*, 476 U.S. 926, 936, 106 S.Ct. 2333, 2340, 90 L.Ed.2d 921 (1986), held that while

[i]t may well be that some of the same concerns that limit the application of equitable estoppel against the Government bear on the appropriateness of awarding other remedies that have a close substantive resemblance to an estoppel[, w]e reject ... petitioners' suggestion that any remedy that can be analogized to an equitable estoppel is necessarily invalid, regardless of the source of the cause of action, unless the plaintiff succeeds in proving all the elements of common-law estoppel.

*Id.*

Waiver and estoppel are conceptually distinct defenses with separate proof requirements. While the district court claimed that there were special circumstances in the instant case which permitted the waiver defense to be subsumed into estoppel, it did not discuss what those circumstances were. We find nothing unique about the instant case, and thus, on the basis of *Lyng*, we will analyze plaintiff's waiver claim separately from its estoppel argument.

permit." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *see also Community Health Services*, 467 U.S. at 63, 104 S.Ct. at 2225; *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Morgan v. Heckler*, 779 F.2d 544, 546 (9th Cir.1985). Specifically, in the insurance context, in *Federal Crop Ins. Corp.*, 332 U.S. 380, 68 S.Ct. 1, the Supreme Court held that because the limitations on eligibility for government crop insurance were defined by a government agency under the authority of Congress, no government agent could create liability on the part of the Government for a loss that was not covered under the insurance regulations. *See also Wagner*, 847 F.2d at 518 ("[T]he conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed.").[4] Accordingly, the United States cannot be considered to have waived its right to reimbursement simply because its agents mailed an unlawful payment to the Fowlers.[5]

## B. Negligence Counterclaim

■ The Fowlers counterclaimed against the United States on a theory of negligence under the Tort Claims Act. The trial court found that their claim fell within the misrepresentation exception under the Act and granted the motion to dismiss the counterclaim. We agree.

28 U.S.C. § 2680(h) prohibits claims against the government arising out of negligent, as well as intentional, misrepresen-

tation.[6] *Block v. Neal*, 460 U.S. 289, 295, 103 S.Ct. 1089, 1092, 75 L.Ed.2d 67 (1983). The prohibition applies only to the misrepresentation portion of the lawsuit. If the plaintiff brings both a misrepresentation and a negligence claim, the government's conduct is actionable under the negligence claim even if the two claims share certain factual and legal questions. *Id.* at 298, 103 S.Ct. at 1094.

■ Courts have had difficulty determining whether a claim is one for misrepresentation. The concept is slippery; "any misrepresentation involves some underlying negligence" and "any negligence action can be characterized as one for misrepresentation because any time a person does something he explicitly or implicitly represents that he will do the thing non-negligently." *Guild v. United States*, 685 F.2d 324, 325 (9th Cir.1982). To determine whether a claim is one of misrepresentation or negligence the court examines the distinction

> between the performance of operational tasks and the communication of information. The Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved. It is not liable, however, for injuries resulting from commercial decisions made in reliance on government misrepresentations.

*Id.* at 325.

Under this definition, we find that the Fowlers' action is one solely for misrepresentation.[7] It is true that the government performed the operational task of process-

---

**4.** The limitations on a government agent's ability to bind the government apply to reimbursement of erroneously expended funds such as in the instant case, as well as to the initial distribution. *See Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218; *see also United States v. Systron–Donner Corp.*, 486 F.2d 249, 251 (9th Cir.1973) ("The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid.") (internal quotations omitted).

**5.** In the district court the Fowlers also asserted an accord and satisfaction defense. They did not argue that defense in either of their appellate briefs and we assume that they have waived it.

**6.** 28 U.S.C. § 2680(h) provides, in pertinent part, that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to ... (h) Any claim arising out of ... *misrepresentation*, deceit, or interference with contract rights." (emphasis added).

**7.** The Fowlers' counterclaim asserts as follows:
> As a result of Counterdefendants' [the government's] payment on Claim No. 2–0176–5673–3, Counterclaimants [the Fowlers] have relied to their detriment in signing said Release, and thus, have been damaged financially by Counterdefendants' actions.
>
> Further, Counterdefendants were negligent in processing and paying Counterclaimants' claim, and as a proximate result of such negli-

ing an insurance claim negligently, but the injuries claimed by the Fowlers are not the result of the negligent handling of their claim. The Fowlers were injured because they relied on the government's representation that it would pay for the flood damage when, in fact, it would not. The Fowlers were not damaged by the negligent handling of the claim, which only resulted in them having the use of $23,237.86 for over four years.

Because the Fowlers' claim fits into the category of "negligent misrepresentation" and, therefore, is barred by 28 U.S.C. § 2680(h), we affirm the district court's dismissal of the Fowlers' counterclaim.

## III. ABF

After receiving the check for flood damage on one claim from the United States, the Fowlers negotiated with ABF on the second claim. Pursuant to those negotiations, James Fowler, Sr. signed a contract releasing ABF from any further liability resulting from the flooding on May 16 in exchange for a $5,500 check. The district court found that the release applied in the instant negligence claim and, therefore, granted summary judgment to ABF. For the reasons which follow, we find that there is a genuine factual issue concerning the validity of the release and that the district court was incorrect in granting summary judgment on that basis.

### A. Scope of the Release

The Fowlers argue that the release is invalid because it was intended to cover only the claim rejected by the NFIP, not all claims relating to the flood. This argument is contrary to the clear language in the release.

The form letter release signed by Fowler states in pertinent part that James Fowler, Sr. releases ABF from "any and all claims, actions, causes of action, demand, rights, damages, costs, loss of service, expenses and compensation" which he may have "resulting or to result from the accident, casualty or event which occurred on or about

the 16th day of May, 1984 at or near Salmon Falls Creek near Hagerman, Idaho." The release clearly states that ABF is released from *all* damages relating to the flood, even the property damage paid for by the NFIP. The language of the contract simply does not suggest any limitation in coverage.

Appellants assert, however, that the release should be interpreted as the parties intended. They allege that because they had no need to relinquish any rights to ABF resulting from the first claim they could only have meant to include the second in the release. The Fowlers point to a series of letters leading up to the release as evidence of intent.

Under Idaho law a court can look to extrinsic indicia of the parties' intent only when a contract is ambiguous on its face. *Wood v. Simonson,* 108 Idaho 699, 702, 701 P.2d 319, 322 (1985). Thus, this court can consider the letters between the parties and evidence of Fowler, Sr.'s state of mind only if the contract is ambiguous.

"Whether a contract is ambiguous is a question of law." *Id.* at 321. A contract is ambiguous only if it is reasonably subject to conflicting interpretation. *Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). In determining ambiguity, a court considers a contract in its entirety. *Murr v. Selag Corp.,* 113 Idaho 773, 781, 747 P.2d 1302, 1310 (1987).

Examining the entire release, we find that the language is clear and we are unable to see any reasonable conflicting interpretations. Contrary to the Fowlers' assertion, it is logical that the release would include both claims. ABF may have been afraid that the Fowlers were unhappy with the amount the government offered on the first claim and planned on seeking more from ABF. Accordingly, we agree with the district court that the release covered all claims relating to the flood.

### B. Validity of Release

The Fowlers also assert that the release is invalid because either there was

gence, Counterclaimants have been injured and suffered damages in the amount of $50,-000.

a mutual mistake in its formation or ABF misrepresented the true situation to them. We find that there is a question of fact as to whether there was a mutual mistake, which under Idaho law would invalidate the release.[8]

■ "A mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence." *Mutual of Enumclaw Ins. v. Wood By–Products*, 107 Idaho 1024, 1026, 695 P.2d 409, 411 (1984). "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they base their bargain." *Id.* at 1027, 695 P.2d at 412. Under Idaho law, a mutual mistake permits a party to rescind or modify a contract. *See Bailey v. Ewing*, 105 Idaho 636, 671 P.2d 1099 (1983). However, to permit rescission or modification, "[t]he mistake must be material or, in other words, so substantial and fundamental as to defeat the object of the parties." *Id.* at 639, 671 P.2d at 1102. The existence of a mutual mistake is a question of fact. *Mutual of Enumclaw*, 107 Idaho at 1027, 695 P.2d at 412.

■ There is substantial evidence in the instant case that both parties mistakenly assumed that the government was paying approximately $23,000 worth of the damages. The Fowlers have sworn that they never imagined the United States would demand repayment and evidence indicates that ABF too assumed that the government was paying.[9] It appears that both ABF and the Fowlers thought that $5,000 was adequate consideration for the release simply because the government had already paid a portion of the claim. Thus, the assumption that the government had paid for some of the damages appears to be a "vital fact upon which they base[d] their bargain." *Id.* At the very least, it is a question of fact.[10] Summary judgment is not appropriate when there is a genuine issue of material fact. *Tzung*, 873 F.2d at 1340. We, therefore, reverse the summary judgment order in favor of ABF and recommend that the district court remand the case to Idaho state court where the validity of the release can properly be determined under Idaho law.[11]

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the United States. We reverse, however, the district court's grant of summary judgment in favor of ABF.

AFFIRMED in part; REVERSED in part.

---

8. There also may be a question of fact as to whether ABF misled or misrepresented the situation to the Fowlers. Under Idaho law a party to a contract who makes a unilateral mistake can rescind or modify the agreement if there is misrepresentation or knowledge of the mistake by the other party. *See Cline v. Hoyle & Associates Ins., Inc.*, 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985). Because we find a question of fact as to mutual mistake, we need not reach this issue.

9. The district court disbelieved the Fowlers assertion that they did not suspect that the government would seek reimbursement. This is a credibility determination that is inappropriate at the summary judgment stage.

10. The release does not cover this possibility. The language in the release refers to unknown and unforeseen bodily and personal injuries and property damages resulting from the accident. The obvious meaning of this language in the release is that if the Fowlers discovered additional damage to their property caused by the flood that they were not aware of when they signed the release they could not seek damages from ABF. A mistaken belief that the government would pay is not unknown or unforeseen property damage resulting from the accident and is not covered by the release.

11. Because the district court determined that the release was valid, it never decided whether summary judgment was appropriate on the merits. Both sides argue the merits on appeal. The merits of the Fowlers' negligence claim against ABF rest on whether alternative flood insurance was available and whether proof of alternative insurance is a prerequisite to a negligence claim in Idaho. The former is a hotly disputed factual question and the latter is an undecided issue in Idaho tort jurisprudence. As such, both issues are better decided at the trial level in state court than in federal court on appeal. We, therefore, will not consider the merit arguments.