**Lesley ARD, Steven Ard, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION; Office of Thrift Supervision; United States of America, Defendant.**

**Case No. CV 10–03767 MMM (AJWx).**

United States District Court, C.D. California.

Feb. 11, 2011.

---

**1032**

David N. Tarlow, Ervin, Cohen & Jessup, LLP, Beverly Hills, CA, Jay Marshall

Coggan, Jessica N. Trotter, Coggan and Tarlow, Los Angeles, CA, for Plaintiffs.

Deborah E. Yim, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as the bank's receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). Plaintiffs Lesley Ard and Steven Ard, depositors with IndyMac who lost approximately $2,131,034.00 as a result of the bank's closure, previously filed suit in this district against the FDIC as receiver, alleging wrongful acts by IndyMac (Case No. CV 09–4115).[1] Plaintiffs' claims were dismissed as prudentially moot.[2] Plaintiffs have now filed an action against the United States seeking damages for alleged negligence by the OTS and the FDIC in its corporate capacity.[3]

Plaintiffs commenced this action on May 19, 2010.[4] On June 10, 2010, plaintiffs filed a first amended complaint, naming the United States of America as defendant and dismissing the FDIC and the OTS.[5] On October 29, 2010, the United States moved to dismiss plaintiffs' amended complaint asserting that their claims are barred by res judicata and collateral estoppel.[6] The United States also asserts that the court

1. Complaint against Defendant Federal Deposit Insurance Corporation, Docket No. 1 (June 9, 2009).

2. Order Granting Defendant's Motion to Dismiss, Docket No. 44 (May 25, 2010).

3. Complaint against Defendants Federal Deposit Insurance Corporation, Office of Thrift Supervision, Docket No. 1 (May 19, 2010).

4. *Id.*

5. First Amended Complaint ("Amended Complaint"), Docket No. 8 (June 10, 2010).

6. Notice of Motion and Motion to Dismiss First Amended Complaint, Docket No. 19 (October 29, 2010).

lacks subject matter jurisdiction to hear plaintiffs' claims under the misrepresentation and discretionary function exceptions to the Federal Tort Claims Act ("FTCA").[7]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs contend that as of the date IndyMac closed, they had three accounts at the bank that had a balance of approximately $4,362,067.90.[8] Plaintiffs allege that, in early 2008, they began to hear media reports that IndyMac was on the verge of collapse and that depositors' funds were at significant risk.[9] Plaintiffs assert that in response to these reports, employees, agents, and representatives at the FDIC and the OTS "issued various public statements designed to reassure depositors, including Plaintiffs, that IndyMac was financially sound and that there was no danger of collapse."[10] Plaintiffs purportedly relied on these representations, with the result that when the OTS closed IndyMac in July 2008, they lost half of their deposits.[11] Plaintiffs contend that the OTS and the FDIC employees knew, or should have known, that their actions would harm individuals like them.[12]

Plaintiffs allege, on information and belief, that the OTS has "certain articulated duties and responsibilities," including a duty to examine and assess the financial soundness of savings associations, a duty to supervise financial associations, and a duty to monitor the condition of thrifts.[13] Similarly, they assert that the FDIC has "certain articulated duties," including a

duty to identify, monitor, and address risks to deposit insurance funds.[14] Plaintiffs acknowledge that neither the OTS nor the FDIC has a duty to inform the public of the condition of financial institutions, but assert that when the agencies assume such a role, they have a duty to convey reliable and accurate information.[15]

Plaintiffs plead claims for negligence and negligent supervision based on the statements allegedly made by the OTS and the FDIC concerning the financial stability of IndyMac. They allege that OTS and FDIC employees negligently performed their "articulated and assumed duties" when they issued public statements.[16] They also assert that OTS and FDIC directors, advisors, and agents negligently supervised the employees who made the public statements.[17]

## II. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction

A defendant who seeks dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can facially challenge the sufficiency of the jurisdictional allegations in the complaint; when this type of attack is mounted, the court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Ass'n of American Medical Colleges v. United States,*

---

7. *Id.*

8. Amended Complaint, ¶ 8.

9. *Id.,* ¶ 9.

10. *Id.,* ¶ 10. Plaintiffs do not specifically allege, however, the dates or contents of these alleged representations.

11. *Id.,* ¶¶ 10–12.

12. *Id.,* ¶ 21.

13. *Id.,* ¶ 15.

14. *Id.,* ¶ 16.

15. *Id.,* ¶¶ 14–17.

16. *Id.,* ¶¶ 16–20.

17. *Id.,* ¶¶ 25–33.

217 F.3d 770, 778–79 (9th Cir.2000). Alternatively, the party challenging subject matter jurisdiction can proffer evidence extrinsic to the complaint. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). Where extrinsic evidence is submitted, the uncontroverted allegations in the complaint must be accepted as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor...." *AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996) (citing *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989)). Whatever the nature of the challenge, the party seeking to sue in federal court bears the burden of establishing that the court has subject matter jurisdiction to hear the action. *Ass'n of American Medical Colleges,* 217 F.3d at 778–79.

**B. Whether Plaintiffs' Claims Are Barred By Exceptions to the Federal Tort Claims Act**

■■■ The United States, as sovereign, is immune from suit unless it has waived its immunity. As Justice Thurgood Marshall explained, "[i]t is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). For this reason, the Supreme Court has instructed lower courts to dismiss actions against the United States for lack of jurisdiction unless a plaintiff can show that the United States has waived its immunity. *Id.*

■■■ 28 U.S.C. § 1346(b)(1) contains statutory waivers of immunity for suits under the FTCA. It provides that district courts have "exclusive jurisdiction of civil actions on claims against the United States ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The FTCA thus waives sovereign immunity for certain torts committed by government employees. See *Blackburn v. United States,* 100 F.3d 1426, 1429 (9th Cir.1996) ("The FTCA waives the Government's sovereign immunity for tort claims arising out of the negligent conduct of government employees acting within the scope of their employment," citing *Valdez v. United States,* 56 F.3d 1177, 1179 (9th Cir.1995)); see also *Sheridan v. United States,* 487 U.S. 392, 398, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) (stating that the FTCA "gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,'" citing 28 U.S.C. § 1346(b)).

■■■ This waiver of immunity, however, is limited by the "discretionary function" exception set forth in 28 U.S.C. § 2680(a). The United States bears the burden of proving that the discretionary function exception applies. See *Prescott v. United States,* 973 F.2d 696, 702 (9th Cir. 1992) ("Because an exception to the FTCA's general waiver of immunity, although jurisdictional on its face, is analogous to an affirmative defense, we believe the Sixth and Seventh Circuits correctly placed the burden on the United States as

the party which benefits from the defense.... We thus hold explicitly that the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity"); see also *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir.2001) ("The burden of proving the applicability of the discretionary function exception is on the United States"). In cases where the exception applies, the court lacks subject matter jurisdiction to hear the action. See *Lesoeur v. United States*, 21 F.3d 965, 967 (9th Cir.1994) ("federal courts do not have subject matter jurisdiction over tort actions based on federal defendants' performance of discretionary functions").

### 1. Legal Standard Governing the Discretionary Function Exception

The discretionary function exception provides that the waiver of immunity contained in the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "In this way, the discretionary function exception serves to insulate certain governmental decision-making from 'judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir.2008) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

▮▮ The Supreme Court has devised a two-part test for determining whether the discretionary function exception applies to bar a claim. See *United States v. Gaubert*, 499 U.S. 315, 322–25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The court must first determine whether the challenged action was discretionary, i.e., whether it was governed by a mandatory statute, policy or regulation. If the action is mandatory, it cannot be shielded under the discretionary function exception. *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267 ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice"). Second, the court must ask whether the challenged action is of the type Congress meant to protect, i.e., whether it involves a decision susceptible to social, economic, or political policy analysis. *O'Toole v. United States*, 295 F.3d 1029, 1033–34 (9th Cir. 2002) (summarizing the *Gaubert/Berkovitz* test). So long as it is, "by its nature, susceptible to policy analysis," the challenged action "need not actually be grounded in policy considerations" to trigger the exception. *Miller v. United States*, 163 F.3d 591, 593 (9th Cir.1998).

### 2. Application of the Discretionary Function Exception to Plaintiffs' Negligent Conduct Claim

▮▮ Plaintiffs assert that "agents, employees and representatives of the OTS and the FDIC" negligently performed their "articulated and assumed" responsibilities, including their duty to ensure that information conveyed to the public was "accurate and reliable." [18] Specifically, they assert that the OTS and the FDIC were negligent in issuing "various public statements" that were "designed to reassure depositors" that IndyMac was financially sound.[19] Plaintiffs concede that nei-

---

18. *Id.*, ¶¶ 17–20.

19. *Id.*, ¶¶ 9–10, 16–18.

ther the OTS nor the FDIC was under an "established or statutory duty" to provide information on this subject to the public; they assert, however, that once the representatives assumed that role, they had a duty to ensure the information they conveyed was reliable.[20] Plaintiffs allege that OTS and FDIC representatives knew or should have known that providing unreliable information would harm individuals like them.[21]

Applying *Gaubert*, the court must first determine whether the conduct on which the claims are based was discretionary in nature. If the challenged action was mandated by a statute, policy, or regulation, the discretionary exception does not apply. See *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954 ("The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"). Plaintiffs have not identified, nor can the court locate, any federal statute, regulation, or policy that applies to the conduct challenged in this action. Indeed, plaintiffs specifically allege that there is "no established or statutory duty" requiring either the OTS or the FDIC to "act as a public informer." [22] While plaintiffs assert that the OTS and the FDIC have "certain articulated duties and responsibilities," they identify no statute or regulation supporting that assertion. As a result, plaintiffs' claims are not based on the kind of "specific and mandatory" regulation or policy that creates "clear duties incumbent upon the governmental actors." See *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir.1989) ("*Berkovitz* thus establishes that a safety or engineering standard operates to remove discretion under the FTCA when it is embodied in a *specific* and *mandatory* regulation or stat-ute which creates clear duties incumbent upon governmental actors. A general statutory duty to promote safety ... would not be sufficient" (emphasis original)); *Parsons v. United States*, 811 F.Supp. 1411, 1416 (E.D.Cal.1992) (general references to the "Forest Service policy" did not show that challenged conduct was prescribed by a "specific and mandatory" regulation or policy); see also *Allen v. United States*, 816 F.2d 1417, 1421 (10th Cir.1987) (a broad, general duty to promote safety in atomic testing imposed by statute on the Atomic Energy Commission left room for the exercise of discretion). Because plaintiffs have not established that the OTS or the FDIC violated a mandatory directive, the court concludes the agencies' actions involved judgment or choice and were, in fact, discretionary acts.

Given that the challenged conduct was discretionary, the court must next ask whether it is the type of conduct the exception was designed to protect. The discretionary exception applies to bar a claim only if the challenged decision was "grounded in social, economic and political policy." *Gaubert*, 499 U.S. at 335, 111 S.Ct. 1267 (citing *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). As indicated, it is not necessary that the OTS and the FDIC actually have weighed social, economic, or political policy concerns, so long the disputed conduct is susceptible of policy analysis. Based on the facts alleged in plaintiffs' amended complaint, the court concludes that whether or not to issue a public statement about the financial health of a savings and loan association or banking institution is the kind of policy judgment that the discretionary function exception was designed to shield.

20. *Id.*, ¶¶ 15–17.

21. *Id.*, ¶ 21.

22. *Id.*, ¶¶ 14–16.

See *Kennewick Irr. Dist.*, 880 F.2d at 1028 ("It is this type of decision ... that is within the purview of section 2680(a) because the ... decision ... was rooted in economic policy judgments"). Public statements like those plaintiffs attribute to the OTS and the FDIC serve a variety of public policy interests: they protect banks' assets, benefitting both the bank and consumers; they promote the health of the savings and loan/banking industry as a whole; and they restore the public's confidence in the industry. See *Gaubert*, 499 U.S. at 332, 111 S.Ct. 1267 (" 'The federal regulators here had two discrete purposes in mind as they commenced day-to-day operations.... First, they sought to protect the solvency of the savings and loan industry.... Second, they sought to preserve the assets of the IASA for the benefit of depositors and shareholders ...' "); *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir.2005) ("Government actions can be classified along a spectrum, ranging from those 'totally divorced from the sphere of policy analysis,' such as driving a car, to those 'fully grounded in regulatory policy,' such as the regulation and oversight of a bank," citing *Gaubert*, 499 U.S. at 325 n. 7, 111 S.Ct. 1267).

This position is consistent with a long line of cases where courts have held that the discretionary function exception insulates the United States from liability for claims arising out of the regulation of banking institutions. See *Gaubert*, 499 U.S. at 332–33, 111 S.Ct. 1267 (holding the discretionary function exception covered decisions made by federal regulators charged with supervising a savings and loan association, and noting that the management of banking affairs regularly requires judgment as to which range of permissible courses is the wisest); *Dichter–Mad Family Partners, LLP v. United*

*States*, 707 F.Supp.2d 1016, 1028 (C.D.Cal. 2010) (noting that, although it can be difficult in some cases to determine whether the discretionary function applies, "the regulation and oversight of a bank" is a government action that is "fully grounded in regulatory policy"); *Federal Deposit Ins. Corp. v. Carter*, 701 F.Supp. 730, 737 (C.D.Cal.1987) ("In general, the dividing line for the FDIC's negligence liability is the date it assumes receivership of a bank. Before that time, the discretionary function exemption of the FTCA protects the FDIC from any liability for negligence in examining a bank.... These are policy decisions which a court cannot second-guess").

◼ Plaintiffs attempt to avoid application of the exception by asserting that once the OTS and the FDIC undertook to provide information to the public concerning IndyMac's financial stability, they had a duty to act with due care.[23] Once a court determines that the discretionary function exception shields the government from liability for the challenged conduct, however, no claim against the government can be successfully mounted. See *In re Franklin Nat. Bank Sec. Litig.*, 478 F.Supp. 210, 219 (E.D.N.Y.1979) ("Even if the third party plaintiffs could successfully argue the implication of a duty from the bank regulatory statutes, or could establish facts supporting the theory of an assumed duty, it is highly unlikely that the resulting cause of action could be brought under the Federal Tort Claims Act" because "the Act provides that sovereign immunity has not been waived with respect to discretionary functions").

Because the public statements allegedly made by OTS and FDIC representatives regarding the financial stability of Indy-Mac are the kind of discretionary actions

---

23. *Id.*, ¶¶ 17–18.

Congress intended to protect, the discretionary function exception to the FTCA bars plaintiffs' claim.[24]

### 3. Application of the Discretionary Function Exception to Plaintiffs' Negligent Supervision Claim

 Defendant contends that plaintiffs' negligent supervision claim is also barred by the discretionary function exception to the FTCA. The first prong of the discretionary function test is satisfied because plaintiffs have not identified any mandatory government regulation of the OTS or the FDIC pre-receivership that prescribes specific supervisory duties related to financial institutions such as IndyMac.[25]

The second prong is also satisfied because supervision involves policy judgment. The *Gaubert* court held that when statutes, policies, regulations, or guidelines allow a government official to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. Additionally, the Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield," *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir.2000), and that claims of negligent supervision "fall squarely within the discretionary function exception,"

*Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (allegations that United States customs service negligently supervised and trained its agents fell within the discretionary function exception). See *Gager v. U.S.*, 149 F.3d 918, 920–22 (9th Cir.1998) (United States Postal Service's decision not to provide universal training and supervision in mail bomb detection fell within the discretionary function exception); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception"); see also *Bibeau v. Pac. Northwest Research Found.*, 339 F.3d 942, 945–46 (9th Cir.2003) (the United States' decision not to supervise government-funded research experiments concerning the effect of radiation on human testicular function was discretionary and fell within the discretionary function exception).

Plaintiffs allege that "the FDIC and the OTS failed to supervise their agents and representatives, and [permitted them to] ... exceed[] their statutorily prescribed duties of oversight and supervision and ma[k]e statements to the public regarding the soundness of IndyMac."[26] *Gaubert* instructs, however, that discretionary supervisory conduct is presumptively grounded in policy, *Gaubert*, 499 U.S. at

---

**24.** In addition to challenging public statements made by the agencies, plaintiffs appear to assert that the OTS and the FDIC were negligent in discharging other "articulated duties." (*Id.*, ¶¶ 14–21). Their complaint does not plead negligent conduct apart from the public statements, however, and their opposition to defendant's motion to dismiss similarly references only the public statements. (Opposition to Motion to Dismiss First Amended Complaint ("Opposition"), Docket No. 25 (Jan. 26, 2011) at 9–10). Because plaintiffs have identified no mandatory statute, policy, or regulation that gave rise to "articulated duties," it appears that even if

properly alleged, a claim based on negligent conduct other than the public statements would be barred by the discretionary function exception.

**25.** Plaintiffs assert that the OTS and the FDIC have "certain articulated duties and responsibilities," but identify no statute or regulation delineating these duties. (Amended Complaint, ¶¶ 23–25). Accordingly, the analysis set forth above applies equally to plaintiffs' negligent supervision claim.

**26.** *Opposition at 11.*

324, 111 S.Ct. 1267, and the Ninth Circuit has so held on multiple occasions, see, e.g., *Vickers*, 228 F.3d at 950; see also *Miller*, 163 F.3d at 593 (challenged action "need not actually be grounded in policy considerations" so long as it is, "by its nature, susceptible to policy analysis"). In sum, because supervisory decisions are susceptible of policy analysis, and are thus of the type to which Congress intended that the discretionary function exception apply, the discretionary function exception bars plaintiffs' negligent supervision claim.

### 4. Legal Standard Governing the Misrepresentation Exception

Defendant contends that even if plaintiffs' claims were not barred by the discretionary function exception to the FTCA, they would be barred by the misrepresentation exception. The misrepresentation exception prohibits claims against the government arising out of negligent, as well as intentional, misrepresentations by its agents. See 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to— [a]ny claim arising out of ... libel, slander, misrepresentation, deceit, or interference with contract rights ..."); *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) ("We are in accord with the view urged by the Government and unanimously adopted by all Circuits which have previously had occasion to pass on the question, that [section] 2680(h) comprehends claims arising out of negligent, as well as willful, misrepresentation"); *United States v. Fowler*, 913 F.2d 1382, 1387–88 (9th Cir.1990) (holding that insureds' claim against the government was barred by the misrepresentation exception because their claim was predicated on the fact that the government negligently misrepresented it would pay for flood damage when, in fact, it would not).

■ Under this exception, the government is not liable for injuries resulting from commercial decisions made in reliance on government misrepresentations. See *Guild v. United States*, 685 F.2d 324, 325 (9th Cir.1982) ("The Government ... is not liable ... for injuries resulting from commercial decisions made in reliance on government misrepresentations"); *Bennett v. United States*, 974 F.2d 1341, 1992 WL 214545, *3 (9th Cir. Sept. 2, 1992) (Unpub. Disp.) ("This Court has consistently held that § 2680(h) 'precludes liability when the plaintiff suffers an economic loss as a result of a commercial decision based on a misrepresentation consisting of either false information or a failure to provide information it had a duty to provide' "); see also *Mullens v. United States*, 785 F.Supp. 216, 222 (D.Me.1992) ("Congress has determined that citizens should not be able to hold their government liable for misrepresentations").

### 5. Application of the Misrepresentation Exception to Plaintiffs' Claims

Because plaintiffs' claims against the government are premised on allegations that the government misrepresented the financial health of IndyMac, their claims are barred by 28 U.S.C. § 2680(h). The fact that plaintiffs style their claims as causes of action for negligence does not save them from the misrepresentation exception's bar.

■ When a plaintiff alleges negligence rather than misrepresentation, the court can nonetheless determine that he alleges a misrepresentation and find the claim barred by the exception. See *Neustadt*, 366 U.S. at 703, 81 S.Ct. 1294 (" 'We must look beyond the literal meaning of the language to ascertain the real cause of complaint,' " citing, *inter alia, Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)); *Fowler*, 913 F.2d at 1387 (holding that plaintiff's claim was "one solely for

misrepresentation" even though she framed it in terms of negligence, and noting that any misrepresentation involves some underlying negligence). "The key distinction in this area is between the performance of operational tasks and the communication of information." *Guild,* 685 F.2d at 325; see *id.* (holding that the "misrepresentation" exception applies to claims for damages based on the government's provision of allegedly false or inadequate information); see also *Fowler,* 913 F.2d at 1388 ("the [insureds'] claim fits into the category of 'negligent misrepresentation' and, therefore, is barred by 28 U.S.C. § 2680(h)"); *Alexander v. United States,* 787 F.2d 1349, 1350–51 (9th Cir. 1986) ("Although [plaintiff's] claim is based on negligence, it is actually a claim for 'misrepresentation' and therefore barred by the immunity retained under 28 U.S.C. § 2680(h)"); *Thomas–Lazear v. F.B.I.,* 851 F.2d 1202, 1206 (9th Cir.1988) (holding that "the essence of [plaintiff's negligent infliction of emotional distress] claim [was] the spreading of slanderous statements and ... it [was] thus barred by section 2680(h)"); *Bennett,* 1992 WL 214545 at *3 ("Plaintiffs in *Neustadt* relied upon an inaccurate appraisal by the Federal Housing Administration and paid more than fair market value for their home. The Supreme Court barred the claim under § 2680(h) because the action for negligent inspection and appraisal was merely an action for negligent misrepresentation defined as 'the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs'"); *Bergman v. United States,* 751 F.2d 314, 317 (10th Cir.1984) (holding that a "negligence" claim based on defendant's alleged failure to "correct" plaintiff's work classification records was

actually a "misrepresentation, deceit and slander" claim that was barred by the misrepresentation exception); *Deloria v. Veterans Admin.,* 927 F.2d 1009, 1012 (7th Cir.1991) ("The gravamen of [plaintiff's] claim is that VA officials deliberately misrepresented and distorted his medical records.... [Plaintiff] cannot sidestep the statutory limits of the FTCA by artfully couching his complaint in different jargon").

 Plaintiffs' negligence claim is barred by the misrepresentation exception because they allege that they made a commercial decision in reliance on government representations, and suffered a financial loss as a result. Plaintiffs assert that the OTS and the FDIC "issued various public statements" pertaining to the "financial sound[ness]" of IndyMac on which they relied to their detriment.[27] Thus, plaintiffs' negligence claim is barred by the misrepresentation exception to the FTCA. See *Neustadt,* 366 U.S. at 710–11, 81 S.Ct. 1294 ("While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability"); *Guild,* 685 F.2d at 325; *Green v. United States,* 629 F.2d 581, 584 (9th Cir.1980); *Bennett,* 1992 WL 214545 at *3.

 Plaintiffs' negligent supervision claim is also barred by the exception because it too is founded on an allegation that the government misrepresented Indy-Mac's financial stability. Plaintiffs allege that OTS and FDIC directors and supervisors negligently supervised their employees, which in turn enabled the employees negligently to issue the public statements in question.[28] Because the statements are

---

**27.** Amended Complaint, ¶¶ 9–13.

**28.** Opposition at 11.

a crucial element in the chain of causation between defendant's negligence and plaintiffs' damages, their claim is barred by the misrepresentation exception. See *Leaf v. United States,* 661 F.2d 740, 742 (9th Cir. 1981) ("[Government informant's] admittedly intentional misrepresentations to plaintiffs were clearly within the chain of causative events upon which plaintiffs' claim is founded, and thus within the misrepresentation exception.... Put another way, misrepresentation was definitely a significant factor relied upon by plaintiffs in maintaining their suit, and the suit is therefore barred by the misrepresentation exception"); see also *Block v. Neal,* 460 U.S. 289, 297, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) ("Section 2680(h) ... relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements"); *Gollehon Farming v. United States,* 17 F.Supp.2d 1145, 1152 (D.Mont.1998) ("the court must determine whether the chain of causation from the alleged negligence to the alleged injury depends on the transmission of misinformation by the government.... If the causal chain is dependent upon the transmission of misinformation, the misrepresentation exception applies and there is no waiver of sovereign immunity under the FTCA"); *Schinmann v. United States,* 618 F.Supp. 1030, 1037 (E.D.Wash.1985) ("The proximate cause of the loss to the farmers appears to have been the misrepresentation or communication of misinformation, not the erroneous calculation of figures").

The public statements allegedly issued by OTS and FDIC employees are a critical component of plaintiffs' negligent supervision claim. Because they allege no injuries arising out of negligent supervision independent of those caused by the misrepresentation, their claim must be treated as one for misrepresentation rather than negligence; so construed, their claim is barred by the misrepresentation exception. See *Neustadt,* 366 U.S. at 711, 81 S.Ct. 1294 (holding that a negligent inspection claim was actually a misrepresentation claim because the alleged injury arose out of the fact that inspectors misrepresented the value of the home, and plaintiff alleged no injury that he would have suffered independent of his reliance on the erroneous home appraisal); *Block,* 460 U.S. at 296–97, 103 S.Ct. 1089 ("The gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a [statement] prepared by the Government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. Because the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the 'misrepresentation' exception").

Because plaintiffs' negligence and negligent supervision claims are both premised on an allegation that plaintiffs suffered financial loss because they made a commercial decision in reliance on government misrepresentations, both claims are barred by the misrepresentation exception.

## III. CONCLUSION

■ For the reasons stated, the court grants the United States' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction.[29] Ordinarily a court should grant leave to amend unless it finds that amendment of the claim would be futile. See, e.g., *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051 (9th Cir.

**29.** As the court has dismissed the complaint under the discretionary function and misrepresentation exceptions to the FTCA, it need not consider defendant's arguments that the complaint is barred by res judicata and collateral estoppel.

2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.,* 358 F.3d 661, 673 (9th Cir.2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Because sovereign immunity is a jurisdictional bar, the Ninth Circuit has affirmed dismissals with prejudice where plaintiff's complaint fell within either the discretionary function or misrepresentation exceptions to the FTCA. See, e.g., *Frigard v. United States,* 862 F.2d 201, 204 (9th Cir.1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court. *Black v. Payne,* 591 F.2d 83, 86 (9th Cir.), cert. denied, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). Here, however, the bar of sovereign immunity is absolute: no other court has the power to hear the case, nor can the Frigards redraft their claims to avoid the exceptions to the FTCA. Thus, the district court did not abuse its discretion in dismissing the action with prejudice"); *Bennett,* 1992 WL 214545 at *3 ("Further attempts to amend the complaint would have been futile. The dismissal of the complaint by the district court is AFFIRMED"); see also *Dorking Genetics v. United States,* 76 F.3d 1261, 1263 (2d Cir.1996) (affirming the dismissal of claims against the United States and denial of a motion to amend the complaint as futile because the claims were barred by the misrepresentation and discretionary function exceptions to the FTCA); *McDade v. F.D.I.C.,* 66 F.3d 319, 1995 WL 534731, *2 (5th Cir. July 25, 1995) (Unpub. Disp.) ("The McDades argue that since the FDIC in their motion to dismiss argued that the claims had to be filed against the United States, the court should have allowed them to amend their complaint to add the United States as a party in order to cure this defect. However, the McDades themselves admitted to the court in their response to the FDIC's motion to dismiss that both the negligence/negligent misrepresentation claim and the DTPA claim fall within the FTCA's misrepresentation exception, 28 U.S.C. § 2860(h)"); *Dynamic Image Technologies, Inc. v. United States,* 18 F.Supp.2d 146, 153 (D.P.R.1998) (permitting plaintiffs to amend the complaint, but stating that "[p]laintiffs' amended complaint should not merely reformulate the contract, slander, libel, and misrepresentation claims which are dismissed herein because the Court does not have subject-matter jurisdiction over them, no matter how Plaintiffs dress them up").

Here, it does not appear that plaintiffs will be able to reallege their claims without asserting a causal connection between their financial injury and defendant's public statements regarding IndyMac's financial stability, so as to avoid the misrepresentation exception and/or the discretionary function exception to the FTCA. As any amendment would be futile, the court grants defendant's motion to dismiss without leave to amend.